UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA

vs.                                     Case No. 23-cr-00198-ACR

MICHELLE ALEXANDRA ESTEY

### DEFENDANT MICHELLE ESTEY'S SENTENCING MEMORANDUM

Defendant Michelle Estey ("Ms. Estey"), by and through undersigned counsel, respectfully submits the following Sentencing Memorandum setting forth factors for the Court's consideration in its determination of what type and length of sentence is sufficient, but not greater than necessary, to comply with the statutory directives set forth in 18 U.S.C. §3553(a).

### PROCEDURAL HISTORY

On September 23, 2022, Ms. Estey was arrested in her home state of California pursuant to an arrest warrant dated September 16, 2022. Ms. Estey is charged by Information of four misdemeanor violations:

- Count One - 18 U.S.C. 1752(a)(1), Entering and Remaining in a Restricted Building or Grounds.

- Count Two - 18 U.S.C. 1752(a)(2), Disorderly and Disruptive Conduct in a Restricted Building or Grounds.

- Count Three - 40 U.S.C. 5104(e)(2)(D), Disorderly Conduct in a Capitol Building

- Count Four: - 40 U.S.C. 5104(e)(2)(G), Parading Demonstrating, Picketing in a Capitol Building.

On October 4, 2022, the Court imposed conditions of release which, in addition to the standard terms of release, Ms. Estey was ordered to supervision by the Central District of California Pretrial Services and required to turn in her passport. The conditions of her release require that Ms. Estey ask for permission from Pretrial Services to travel outside the five-county jurisdiction of the Central District of California.  Ms. Estey has been in full compliance with these conditions.

On August 22, 2023, Ms. Estey entered a plea of guilty to Count 4 of the Information pursuant a plea agreement with the Office of the United States Attorney for the District of Colombia. Pursuant to the agreement, the government will not prosecute Ms. Estey on the remaining three counts and will ask that the Court dismiss those counts at sentencing.

Count 4 charges that Ms. Estey willfully and knowingly paraded, demonstrated, and picketed in the United States Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G), a Class B misdemeanor. This section carries a maximum sentence of six months imprisonment (40 U.S.C. § 5109(b)), up to five years' probation, and a fine of not more than $5,000 (18 U.S.C. § 3571(b)(6)). United States Probation recommends 36 months' probation and no fine.  Pursuant to the plea agreement, Ms. Estey agrees to pay $500 in restitution.

## BACKGROUND FACTS

Ms. Estey does not offer this recitation of events as an excuse for her behavior,

but only to inform the Court of her state of mind at the time.

On January 6, 2021, Ms. Estey attended the "Stop the Steal" rally in the District of Columbia. After the rally, Ms. Estey went to a nearby restaurant with co-defendant Melanie Belger. While at the restaurant they observed many participants from the rally walking by. Ms. Estey and Ms. Belger speculated that there might be another speaking event at the Capitol and decided to join them. They made their way to the Capitol grounds where they joined a crowd assembled at the Capitol grounds. Ms. Estey regrets this decision for if she had known then that she was soon to find herself in a chaotic and violent situation, she would have never taken this walk.

As she and Ms. Belger approached the Capitol grounds, the scene was peaceful. She did not observe any barricades surrounding the grounds, nor was she advised by law enforcement or others to turn back. She truly was not aware that she might be in a restricted area. She also saw many police officers amid the crowd; these officers made no attempts to disperse the crowd.

Shortly thereafter, Ms. Estey was separated from Ms. Belger in the large crowd at the scaffolding located at the foot of the Capitol building. At this point, the scene was still calm although there were a few agitators in the crowd. Ms. Estey made numerous attempts to call Ms. Belger, but the calls did not go through. She did not want to desert Ms. Belger and was concerned for Ms. Belger's, as well as her own, safety in such a large crowd. As she stood at the at the scaffolding, the crowd was peaceful.

After approximately one hour waiting and looking for Ms. Belger at the scaffolding, Ms. Estey made the impulsive decision to go through a large propped open door, which led to a lower terrace to see if she could find Ms. Belger. Upon entering this area, she observed a sizeable, but peaceful, crowd. She did observe pushing and shoving among some individuals at a distance at the location of a tunnel.

Shortly after entering the lower terrace, she was enveloped in a cloud of irritating vapor, which she was told was tear gas deployed by the police although she did not actually see law enforcement deploying tear gas. She was also informed by others in the crowd that law enforcement had shot rubber bullets into the crowd. Adding to this frightening experience, she observed some individuals, including women, who were bloodied. Navigating her way through the confusion trying to find Ms. Belger, Ms. Estey estimates that she spent perhaps 20 minutes among this crowd. (Ms. Estey is able to estimate the time she spent at both locations by the time stamps on the photos and videos she took while at the scaffolding and the lower terrace.)

Being alone and quite frightened, not knowing where to go, and not wanting to abandon her friend who she believed could be in danger, Ms. Estey made an unwise and fateful decision to enter the Capitol building through a tall broken window (the window was approximately 6 feet high, large enough for an adult to walk through), in search of safety and in hopes that she would find her friend inside the building.

Upon scanning the room she had entered, she did not see initially see Ms. Belger. She started to leave when she came upon Ms. Belger entering through the same window through which she had entered. The scene inside the room was at times

violent. At one point, a large man was violently yelling and breaking furniture. Ms. Estey and Ms. Belger protected themselves by standing against a wall.

Ms. Estey heard "flash-bangs" outside, which exacerbated her confusion and fear. Amidst this chaos and confusion, Ms. Estey unwisely followed others into another room. It was then that Ms. Estey heard the police yelling that everyone needed to exit. (Prior to this, Ms. Estey had not encountered officers telling people to leave.) Ms. Estey promptly made her way back to the window through which she entered and exited the Capitol building. Ms. Estey estimates that she only spent a few minutes inside the Capitol building.

At no time was Ms. Estey carrying any weapons or items that could be used as weapons on the Capitol grounds. She did not engage in any destruction or violence outside or inside the capitol grounds and building. She never incited or encouraged others to enter any area of the Capitol or express unlawful conduct.  She did not post her experiences on social media.

What Ms. Estey did do is make an impulsive and ill-advised decision to enter the Capitol grounds and then the building —a decision she deeply regrets. Ms. Estey knew when she entered the broken window that she did not have permission to enter the building. Her better judgment was clouded by a mix of fear, confusion, naiveite, and a sense of responsibility to her friend from whom she had been separated. Even so, she understood at the time that her presence inside the Capitol building was in violation of the law, and for that she acknowledges that her imprudent decision to enter the building are not excuses for this violation.

## SENTENCING FACTORS FOR THE COURT'S CONSIDERATION

Pursuant to 18 U.S.C. §3553, factors which the Court should consider include the following:

**A. The nature and circumstances of the offense and the history and characteristics of the defendant.**

Ms. Estey's offense conduct consisted of entering restricted Capitol grounds and a restricted building. She did not commit any violence or engage in threatening behavior or words. She did not post her acts on social media. She did not incite others. When told by officers to leave the building, she promptly complied.

Ms. Estey has no criminal history and describes herself as a conscientious law-abiding citizen. She accepts full responsibility for her conduct and sincerely regrets her participation in this event. She has always had a deep respect for our country, law enforcement, and our government. This violation of the law is a deviation from her character. She makes no excuse for her poor judgment but asks the Court to consider that her entrance into the Capitol building was impulsive decision driven by fear for her personal safety.

Ms. Estey has fully complied with her conditions of pre-trial release. She has been under supervision since October 2022.

**B. The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; to afford adequate deterrence to criminal conduct; and to protect the public from further crimes of the defendant.**

While the conduct of some in the riotous mob was violent and challenged the rule of law, Ms. Estey should not be punished for the acts of others. She attended the

Stop the Steal rally with no intention of participating in violence. While she acknowledges that she should be punished for making the choice to enter the Capitol grounds (although initially, she was not aware she was violating the law) and in particular for entering the Capitol building (which she did know at the time was unlawful), her conduct was not so serious as to warrant incarceration. A sentence of probation would adequately reflect the seriousness of the offense.

The likelihood that Ms. Estey will repeat similar conduct is virtually nil. Ms. Estey learned by her participation in this event that a peaceful and lawful assembly can turn violent and unlawful. She will use extreme caution, surely more than most, if she ever chooses to again participate in an exercise of her First Amendment Right to assemble *peaceably and in a lawful manner*. She has fully acknowledged that her conduct on January 6th was not lawful and that the protests she participated in were not peaceful. This experience has forever deterred her from such conduct.

### C. The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

While it is impractical to review every January 6 case with similar records and for whom the defendants have been found guilty of the same offense, there are many January 6 cases in this court in which the defendant was found guilty in violation of 40 U.S.C. 5104(e)(2)(G). A sample of cases[1] where the defendant participated in the events of January 6 and pled guilty to 40 U.S.C. § 5104(e)(2)(G reveal defendant

---

[1] All case information derived from Pacer documentation.

conduct that far exceeded Ms. Estey's in seriousness but where the defendant received a sentence of probation with no term of imprisonment.

Micah Coomer 1:23-cr-00124-ACR

Mr. Coomer pled guilty to violation of 40 U.S.C. § 5104(e)(2)(G). He was an active-duty United States Marine at the time of his violation when he participated in the events of January 6. Mr. Coomer, along with his Marine co-defendants Dodge Hellonen and Joshua Abate, joined other rioters in provocative chants. Mr. Coomer entered the Capitol at the Senate Wing Door minutes after that door was breached. He remained inside the Capitol building for approximately 52 minutes where he observed other rioters engage in aggressive physical skirmishes with police. Mr. Coomer publicly expressed pride in his involvement on January 6, bragging on social media that he was "[g]lad to be apart [sic] of history" and exhorted others to violence, stating that it was necessary to have a "fresh start" and he was "waiting for the boogaloo," which he explained was "Civil war 2".

The government requested a sentence of 30 days incarceration, 60 hours of community service, and $500 in restation. Mr. Coomer was not sentenced to a period of incarceration. On September 26, 2023, he was sentenced to a term of four years' probation, 279 hours of community service, and $500 in restitution.

Andrew Yavoich 1:23-cr-00216-ACR

Mr. Yavoich pled guilty to violation of 40 U.S.C. § 5104(e)(2)(G). Mr. Yavoich approached the Capitol building with a large mob. He could see that a door to the inside of the building was destroyed and officers inside were desperately attempting

to keep rioters out of the building. Mr. Yavoich did not leave but rather started recording the event with his cell phone. Despite the numerous warning signs that he should not be there, Mr. Yavoich meandered through the Capitol building for approximately 17 minutes before leaving.

The government requested that Mr. Yavoich be sentenced to 60 days home confinement, 60 hours of community service, and $500 in restitution. On September 26, 2023, Mr. Yavoich to a term of six months' probation and restitution in the amount of $500.00. He was also ordered to complete 60 hours community service.

Danielle Doyle, 1:21-cr-00324TNM

Ms. Doyle pled guilty to violation of 40 U.S.C. § 5104(e)(2)(G). She entered the Capitol through a broken window, stayed inside for approximately 24 minutes, photographed others including one holding a sign, "The Storm is Here," and continued to write proudly about her presence and actions several weeks after January 6th.

On October 2, 2021, Ms. Doyle was sentenced to 2 months' probation, a $3,000 fine, and $500 in restitution.

Eliel Rosa, 1:21-cr-00068-TNM

Mr. Rosa pled guilty to violation of 40 U.S.C. § 5104(e)(2)(G). He had attended the Stop the Steal rally, returned to his hotel room, and, upon learning of the events at the Capitol, went to the Capitol. Mr. Rosa joined the violent protest and entered the Capitol amidst the chaos. He travelled throughout the Capitol for about 20 minutes, reaching two separate doors to the House Chamber.

On October 13, 2021, Mr. Rosa was sentenced to 12 months' probation, 100 hours community service, $500 restitution.

Sean Cordon, 1:21-cr-00269-TNM

Mr. Cordon pleaded guilty to violation of 40 U.S.C. § 5104(e)(2)(G). He entered the Capitol at the Senate Wing door by climbing through a window. He anticipated violence as he was dressed in vest of body armor and carrying a gas mask.

On November 12, 2021, Mr. Cordon was sentenced to 2 months' probation and a $4000 fine.

William Blauser 1:21-cr-00386-TNM

Mr. Blauser pushed his way through the East Rotonda door. He was viewed on CCTV having physical contact with law enforcement as they were trying to get people to exit when he lowered his shoulder and pushed into law enforcement in an apparent attempt to get access to his co-defendant and extricate her.

On February 3, 2022 Mr. Blauser was sentence to pay a fine of $500 and to pay $500 in restitution with no term of incarceration or supervision imposed.

Brandon Prezlin 1:21-cr-00694-TNM

Mr. Prezlin entered the Capitol but lied to the FBI, denying he had entered the building. Mr. Prezlin was not compliant with the conditions of his release. On June 28, 2022, Mr. Prezlin was sentenced to ten months' probation, a $2,500 fine, and restitution in the amount of $500.00.

Lisa Homer  1:22-cr-00238-TNM

Ms. Homer wore a camouflage patterned helmet, goggles, and a ballistic vest

with a rifle plate when she entered the Capitol through the breached Senate Wing door. She joined a group of rioters inside the Crypt. She entered an area between the east side of the Crypt and the escalators/staircase that lead down to the Capitol Visitor Center, which police were trying to secure when rioters blocked police from closing a large "garage-style" door. Ms. Homer remained inside the Capitol for approximately one hour.

On August 10, 2022, Ms. Homer was sentenced to 36 months' probation, a $5,000 fine, and restitution of $500.00.

Frank Bratjan 1:22-cr-00285-TNM

Mr. Bratjan entered the Capitol building through a broken window near the Senate Wing building. He joined a crowd of rioters who physically pushed against a line of police officers in the hallway. He celebrated on social media that he had "stormed up those steps and into those halls" after returning from the riot and later deleted his social media posts, in an effort to make sure they would be unavailable to investigators.

On September 14, 2022 Mr. Bratjan was sentenced to a term of six months' probation, a $1,500.00 fine, and restitution in the amount of $500.00.

Reva Vincent 1:22CR-00051-TNM

Ms. Vincent posted statements on social media before January 6 stating her intention to "remove congress period" on January 6. While on the Capitol grounds on January 6, she encouraged others to go inside the Capitol. She entered the Capitol

joining in shouts of "our house" and other slogans. She posted false statements on social media about what happened during the riot.

On September 21, 2022, Ms. Vincent was sentenced to 24 months of probation, 60 hours of community service, $1,500 fine, $500 restitution.

**CONCLUSION**

Ms. Estey acknowledges, without reservation or excuse, that she should not have entered the Capitol grounds or building on January 6 and accepts that she should be punished for this conduct. She respectfully submits that after consideration of § 3553(a) factors, the Court should impose a sentence of 6 to 12 months' probation with credit for her time served under pre-trial supervision. Such a sentence is sufficient but not greater than necessary to comply with the purposes set forth in 18 U.S.C. §3553.

DATED: _____,2024                    Respectfully submitted,

                                       _____/s/_____
                                       Dennis P. Gaughan (**CA** State Bar No.156355)
                                       LAW OFFICES OF DENNIS P. GAUGHAN
                                       1432 Edinger Ave. Suite 240
                                       Tustin, CA 92783
                                       Off:  (949) 748-9645 | Fax: (714) 258-8282
                                       Email:  gaughanlaw@pacbell.net

                                       **Attorney for Defendant Michelle Estey**