UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>vs.<br><br>MICHELLE ALEXANDRA ESTEY | Case No. 23-cr-00198-ACR |

### DEFENDANT MICHELLE ESTEY'S RESPONSE TO GOVERNMENT'S SENTENCING MEMORANDUM

In the Government's Consolidated Sentencing Memorandum ("Consolidated Sentencing Memorandum") filed with the Court on January 5, 2024, the government recommends that the Court impose a sentence of 30 days' incarceration and $500 in restitution. The defense respectfully disagrees with the government's recommendation that Ms. Estey serve any incarceration time. The government's recommendation does not adequately account for Ms. Estey's history and character, her minimal conduct on January 6, and her acceptance of responsibility. In response to the government's position, Ms. Estey offers the following for the Court's consideration.

### Ms. Estey's Post Plea Interview with the FBI

The government adorns the statements Ms. Estey gave to the FBI during her November 27, 2023 FBI interview with an interpretation favorable to its position. (A copy of the FBI notes of that interview is attached hereto.) The government asserts that Ms. Estey told the FBI that she was separated from Ms. Belger on the Upper West Terrace and that she remained on the upper terrace and lower terrace

during some of the most violent conflicts between police officers and the violent crowd.

As the FBI notes record, Ms. Estey reported to the FBI that as she and Ms. Belger walked to the Capitol, she did not witness violence or acts against the Capitol Police. She told the FBI that she moved to a "higher level" but lost track of Ms. Belger, she did not witness violence at this time. Ms. Estey never told the FBI she was at the "Upper West Terrace" and believes she was not in the area designated as such. That would be a minor point except the government uses this imputed location as the first factor listed in its sentence recommendation. (Consolidated Sentencing Memorandum, p.2.) The government contends that Ms. Estey presence in that location, as imputed by the government to be the Upper West Terrace, would have alerted Ms. Estey to the violence taking place. As Ms. Estey told the FBI, the "energy" of the crowd changed when she made her way down the stairs in search of Ms. Belger. She told the FBI that she did not witness violence until she got caught up in the chaotic crowd on the lower level.

Ms. Estey's report of the events makes more sense. Would she, a middle-aged woman who displayed no violence that day, choose to stand alone among a violent crowd for one to one-half hours? Ms. Estey's recounting of the events are that as she stood on an upper terrace, she witnessed no violence other than some skirmishes in the distance. Her encounter with the violence did not occur until she was well into the lower terrace, at which point she found herself in the middle of the chaos and then fearing even more so for Ms. Belger, continued her attempt to locate her.

The government questions Ms. Estey's statement that she and Ms. Belger were separated for 90 minutes and "somehow found each other in the ST-2M suite." (Consolidated Sentencing Memorandum, p. 16.) "Somehow." The government seems to imply that Ms. Estey is not telling the truth and that the two women entered the room together. The government attempts to paint Ms. Estey as not entirely honest and forthcoming. It is entirely possible that the two women found each other in ST-2M, but whether they found each other in ST-2M or not has little bearing on the fact that Ms. Estey did enter that room through a broken window. That she readily admitted that she knew this was unlawful at the time and takes responsibility for her poor judgment is a reflection on her honesty.

As to her statements that she was separated from Ms. Belger, Ms. Estey reported to defense counsel that during her separation from Ms. Belger, she attempted to phone Ms. Belger multiple times, but the calls would not go through. In support of this statement, her phone records have been subpoenaed, but as of this writing, have not been received[1].

The government makes a further attempt to discredit Ms. Estey by disputing Ms. Estey's statement that she and Ms. Belger were huddled against a wall in Room ST-2M. The government asserts they did not huddle against a wall but rather made their way around the suite. Ms. Estey never stated that she and Ms. Belger were

---

[1] It is possible the phone records will not reflect the many calls Ms. Estey attempted since as she reports, the calls did not go through. Still, it is hoped that if the records are received, it will support her statements that she was separated from Ms. Belger during this time.

huddled against the wall the entire time they were in the suite and admits that she was in the suite for approximately seven minutes and did walk into another room. However, her statement that she huddled against a wall is true. During an episode in ST-2M, which she reported to the FBI, a man was breaking legs off a table. During this episode, Ms. Estey and Ms. Belger did, indeed, huddle against the wall.

None of the above is meant to absolve Ms. Estey of her conduct; it is offered to inform the Court that the government has taken liberty with the facts in an attempt to portray Ms. Estey as not entirely forthcoming and truthful in order to justify its recommended sentence of 30 days' incarceration.

## COMPARISON CASES

Among the factors the government cites for its recommended sentence is citation to two January 6 cases as "comparators." Those two cases are cited because while the conduct does not comprise "the same balance of aggravating and mitigating factors present here, the sentences in [these] cases provide suitable comparisons to the relevant sentencing considerations in this case." (Consolidated Sentencing Memorandum, p 25.) These two cases are far from suitable comparisons for the reasons set forth below.

### *United States v. Mariposa Castro* 21-cr-299-RBW

(discussed in the Consolidated Sentencing Memorandum at p. 25.)

The government compares the *Castro* case to the instant case because the defendant had left the rally, as had Ms. Estey, but upon learning that people were returning to the rally, decided to go to the Capitol, as Ms. Estey did. Additionally,

the Castro defendant briefly occupied ST-2M, as did Ms. Estey.  The comparison stops there; the government fails to explain the rest of the Castro defendant's conduct. The government only briefly alludes to the Castro defendant filming during the time she was in ST-2M. What the government does not reveal to the Court is the additional conduct of Ms. Castro, which far exceeded Ms. Estey's acts on January 6.

According to the government's Sentencing Memorandum in the Castro case (at pp 2-3), the relevant portion of that sentencing memorandum is attached hereto for reference:

- Ms. Castro "filmed[2] and commented on the rioters' assault on the Lower West Terrace for nearly 30 minutes;"

- "repeatedly stated her intent to break into the Capitol;"

- "broadcast to her social media followers her entry and unlawful presence in the Capitol Building, exclaiming, 'we're going in the Capitol. We're in! We're inside the Capitol House! We got inside the Capitol!';"

- "remained on restricted Capitol grounds and continued filming herself while fellow rioters retrieved objects from Room ST-2M to be used as weapons against law enforcement officers;"

- "continued to glorify the riot and advocate violence as she left the Capitol Grounds, even stating to her followers, 'we're coming, this is war,' when another individual walking with her threatened, 'traitors will be shot. Pence, we're coming'"; and

---

[2] The videos she filmed were viewed nearly 5,000 times. (p.2)

- "has shown no apparent remorse for her self-proclaimed 'brave' misconduct on January 6, 2021."

For this conduct, the government recommended that Ms. Castro be sentenced to sixty days' incarceration. (*Castro* Government's Sentencing Memorandum at p. 2) Ms. Castro received a sentence of 45 days' incarceration. (Consolidated Sentencing Memorandum, p. 25)

Ms. Estey is not accused of *any* similar conduct other than her entry into ST-2M and therefore the comparison is inapt.

### *United States v. Honeycutt*, 22-cr-50-CJN

(discussed in the Consolidated Sentencing Memorandum at p. 26.)

As in the Castro matter, the conduct of the Honeycutt defendant was far more egregious than Ms. Estey's conduct. The government compared this case to Ms. Estey's case because Mr. Honeycutt, like Ms. Estey, was in Room ST-2M and witnessed the destruction that occurred in that room. The government distinguishes Mr. Honeycutt's conduct from Ms. Estey only in that he "took the additional step of passing a long wooden plank outside the Capitol to other rioters to use against police officers." (Consolidated Sentencing Memorandum, p. 26.) This completely omits Mr. Honeycutt's additional conduct, which is far more serious than anything Ms. Estey did.

According to the government's Sentencing Memorandum in the Honeycutt case (at p. 2), the relevant portion of that sentencing memorandum is attached hereto for reference:

Mr. Honeycutt

- "filmed, handled, and posted videos of property destruction within [the Capitol conference room];"

- "posted images to social media of confrontations between rioters and police and property destruction committed by other rioters, then mocked the vastly outnumbered police officers who were trying to defend the Capitol on the West Terrace for 'hiding' from the mob;"

- "helped to pass a long wooden plank to other rioters who were violently battling police in the Lower West Terrace Tunnel after he had exited the Capitol Building;" and

- "initially posted images of his participation on social media but deleted them several days later and a gave false explanation of his conduct on Facebook that minimized his involvement in the riot. "

For this conduct, the government recommended that Mr. Honeycutt be sentenced to ninety days' incarceration. (*Honeycutt* Sentencing Memorandum at p. 2.) Mr. Honeycutt received the recommended sentence. (Consolidated Sentencing Memorandum, p. 26)

For the government to compare Mr. Honeycutt's conduct to Ms. Estey's conduct, as only a witness to the violence in ST-2M, but in no way an instigator or participant in that violence, is an unjust comparison.

Clearly Ms. Estey's case is comparable to these two cases only at the bare minimum. The minimum similarities are that Ms. Estey presented at the Capitol

grounds during the riots, entered the Capitol building through a broken window, and briefly occupied Room ST-2M. There the comparisons end. The additional conduct exhibited by Ms. Castro and Mr. Honeycutt significantly distinguishes those two cases from the present case. Ms. Estey did not film her acts or the events inside Room ST-2M, she did not post on social media, she did not encourage a crowd, she did not engage in inciting behavior, she did not engage in any violent behavior or words, and she has expressed deep remorse for her involvement in the events of January 6.

## CONCLUSION

For the reasons stated in Michelle Estey's Sentencing Memorandum filed with the Court, and in consideration of the relevant §3553(a) factors, the government's recommendation of a sentence of 30 days' incarceration is not warranted and would be an unjust punishment for this defendant who did not commit any violence, did not incite any person, and did not brag about her conduct to others, but rather expressed remorse and has taken responsibility for her conduct.

DATED: _____,2024

Respectfully submitted,

/s/
_____
Dennis P. Gaughan (CA State Bar No.156355)
LAW OFFICES OF DENNIS P. GAUGHAN
1432 Edinger Ave. Suite 240
Tustin, CA 92783
Off:  (949) 748-9645 | Fax: (714) 258-8282
Email:  gaughanlaw@pacbell.net
Attorney for Defendant Michelle Estey